## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MICROSOFT CORPORATION, a
Washington State Corporation,

        Plaintiff,

    v.

John Doe 1,
John Doe 2, a/k/a SamCodeSign,
      a/k/a "Fox Tempest,"

and

John Does 3–4,
      a/k/a "Vanilla Tempest,"

        Defendants.

Civil Action No. 26 Civ. 3737

**FILED UNDER SEAL**

## ▬▬▬▬▬ *EX PARTE* TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

Plaintiff Microsoft Corporation ("Microsoft") has filed a complaint for injunctive and other relief pursuant to: (1) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)–(d); (2) the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(b) and 1030(a)(6); (3) the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), and 1125(c); and New York state common law claims of (4) breach of contract; (5) trespass to chattels; and (6) unjust enrichment. Microsoft has moved *ex parte* for an emergency temporary restraining order and an order to show cause why a preliminary injunction should not be granted pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, 18 U.S.C. § 1964(a) (RICO), 15 U.S.C. § 1116(a) (the Lanham Act), 18 U.S.C. § 1030(g) (the Computer Fraud and Abuse Act), and 28 U.S.C. § 1651(a) (the All-Writs Act).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having reviewed the papers, declarations, exhibits, and the memorandum filed in support of Microsoft's Emergency *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction ("TRO Application"), the Court hereby makes the following findings of fact and conclusions of law:

1.      This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and there is good cause to believe that it will have jurisdiction over all parties hereto; the Complaint states a claim upon which relief may be granted against John Does 1–2 (collectively "Fox Tempest Defendants") and John Does 3–4 (collectively "Vanilla Tempest Defendants," and together with Fox Tempest Defendants, the "Defendants") pursuant to: (1) the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)-(d); (2) the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(b) and 1030(a)(6); (3) the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), and 1125(c); and New York state common law claims of (4) breach of contract; (5) trespass to chattels; and (6) unjust enrichment.

2.      There is good cause to believe that Defendants are members of a sophisticated criminal enterprise that has systematically exploited Microsoft's code-signing technology to facilitate their unlawful conduct. Fox Tempest Defendants have created more than 580 fraudulent Microsoft tenants to obtain access to Microsoft's Artifact Signing service, a managed code signing solution used by software developers, and have sold fraudulently obtained code signing certificates to Vanilla Tempest Defendants and other cybercriminals. Vanilla Tempest Defendants have used those certificates to digitally sign malware, disguising it as legitimate software, including representing them as Microsoft products, to deploy ransomware, steal sensitive information, and extort victims for financial gain.

3.    There is good cause to believe that Fox Tempest Defendants supply their illicit code signing service by fraudulently creating Microsoft tenants designed to bypass Microsoft's identity validation requirements, including exploiting GoDaddy.com, LLC's ("GoDaddy") partner sign-up process by registering new domains using fake names and contact information, submitting fake government identification, and creating fraudulent shell companies or business registration documents.

4.    There is good cause to believe that Defendants have distributed certificates to cybercriminals through two channels: (1) the website signspace.cloud, registered through GoDaddy and (2) virtual machines hosted by RouterHosting LLC ( d/b/a "Cloudzy").

5.    There is good cause to believe that Defendants have engaged in and are likely to continue engaging in acts or practices that violate the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1962, 1962(d)), the Computer Fraud and Abuse Act (18 U.S.C. § 1030), the Lanham Act (15 U.S.C. §§ 1114, 1125), and constitute breach of contract, trespass to chattels, and unjust enrichment, and Microsoft, therefore, is likely to prevail on the merits of this action.

6.    Microsoft owns the registered trademarks Microsoft®, Windows®, Microsoft 365®, Microsoft Teams®, and Azure®, and numerous other trademarks used in connection with its services, software, and products.

7.    There is good cause to believe that, unless Defendants are restrained and enjoined by Order of this Court, immediate and irreparable harm will result from Defendants' ongoing violations. The evidence set forth in Microsoft's Memorandum of Law in support of its TRO Application and the accompanying declarations and supporting exhibits, demonstrate that Microsoft is likely to prevail on its claims that Defendants have engaged in violations of the

3

foregoing law by:

A. Fraudulently creating more than 580 Microsoft tenants using false identifying information to obtain access to Microsoft's Artifact Signing service and to generate code signing certificates;

B. Selling and distributing fraudulently obtained code signing certificates to cybercriminals, including Vanilla Tempest Defendants, through Telegram, Google Forms, and other infrastructure they manage;

C. Operating infrastructure specifically designed for the distribution of fraudulently obtained certificates, including the signspace.cloud website and virtual machines hosted by Cloudzy;

D. Signing malware, including "Oyster" (also known as "Broomstick" or "CleanupLoader"), with fraudulently obtained certificates to bypass security features of the Windows operating system, including SmartScreen, User Account Control, and Smart App Control;

E. Creating fraudulent installer files bearing the name "MSTeamsSetup.exe" and hosting them on malicious domains designed to mimic legitimate Microsoft Teams websites;

F. Employing search engine optimization poisoning and malicious advertising campaigns to lure Microsoft's customers to malicious download sites;

G. Deploying malware onto thousands of computers in the United States, including machines owned and operated by Microsoft, causing damage by collecting system information, stealing credentials, executing unauthorized commands, downloading additional malware, and deploying ransomware;

H. Operating a Racketeering Enterprise by leveraging each other's work to: (i) fraudulently obtain code signing certificates from Microsoft's Artifact Signing service through identity fraud and misrepresentation, (ii) sell and distribute those certificates to cybercriminals, (iii) sign and deploy malware on the computers of Microsoft and its customers, (iv) gain unauthorized access to victims' computers, and (v) engage in further malicious activities, including exfiltrating sensitive personal and financial information, deploying ransomware, and extorting victims for financial gain; and

I. Infringing the protected marks of Microsoft for the purpose of causing confusion or mistake, whereby the victims of Defendants' attacks mistakenly associate such conduct with Microsoft.

8.      There is good cause to believe that if such conduct continues, irreparable harm will occur to Microsoft, Microsoft's customers, and the public. Defendants' activities irreparably damage Microsoft's reputation, brands, and customer goodwill. If a customer stops using Microsoft's products because the customer, unaware of Defendants' deception, blames Microsoft for Defendants' malware or believes that Microsoft's products are not secure, Microsoft may not be able to convince the customer to return to Microsoft. In addition, Defendants' data theft and deployment of additional malware and ransomware harming Microsoft's customers and the public cannot be remedied after the fact.

9.      There is good cause to believe that Defendants will continue to engage in such unlawful actions if not immediately restrained from doing so by Order of this Court. Notwithstanding Microsoft's prior disruption efforts, including the revocation of more than 200 code-signing certificates in October 2025 and implementation of additional anti-fraud measures that introduced substantial friction into the signspace.cloud website, Defendants have persisted in their unlawful conduct and continued to engage in the criminal scheme described herein.

10.     There is good cause to believe that immediate and irreparable damage to this Court's ability to grant effective final relief will result from the continued operation of Defendants' infrastructure, including the signspace.cloud website and the virtual machines hosted by Cloudzy identified in **Exhibit 2** and **Appendix B** to the Complaint, respectively, and from the destruction or concealment of other discoverable evidence of Defendants' misconduct if they receive advance notice of this action. Based on the evidence cited in Microsoft's TRO Application and accompanying declarations and exhibits, Microsoft is likely to be able to prove that:

  A. Defendants are engaged in activities that directly violate United States law and harm Microsoft, its customers, and the public;

B. Defendants have continued their unlawful conduct despite the clear injury to the foregoing interests;

C. Defendants are likely to relocate Internet infrastructure and migrate their code signing operations to new virtual machines and hosting providers, thereby permitting them to continue their illegal acts; and

D. Defendants are likely to warn their associates engaged in such activities if informed of Microsoft's action.

11.    Microsoft's request for this emergency *ex parte* relief is not the result of any lack of diligence on Microsoft's part but, instead, is based upon the nature of Defendants' unlawful conduct. Therefore, in accordance with Federal Rule of Civil Procedure 65(b), 18 U.S.C. § 1964(a), 15 U.S.C. § 1116(a), 18 U.S.C. § 1030(g), and 28 U.S.C. § 1651(a), good cause and the interest of justice require that this Order be **GRANTED** without prior notice to Defendants, and accordingly, Microsoft is relieved of the duty to provide Defendants with prior notice of Microsoft's motion and requested relief.

12.    There is good cause to believe that Defendants have operated their criminal scheme through certain instrumentalities—specifically through the signspace.cloud website identified in **Exhibit 2** to the Complaint and the virtual machines hosted by Cloudzy identified in **Appendix B** to the Complaint.

13.    There is good cause to believe that to halt the injury caused by Defendants immediately, they must be prohibited from fraudulently obtaining access to Microsoft's Artifact Signing service, prohibited from operating or using the signspace.cloud website or the virtual machines hosted by Cloudzy to distribute code signing certificates, and prohibited from using Microsoft's trademarks to perpetrate their unlawful scheme.

14.    There is good cause to believe that to halt the injury caused by Defendants immediately, the signspace.cloud domain identified in **Exhibit 2** to the Complaint must be

transferred beyond the control of Defendants' criminal operation, and the virtual machines hosted by Cloudzy and identified in **Appendix B** to the Complaint must be seized or otherwise rendered inaccessible to Defendants.

15. There is good cause to believe that to halt the injury immediately, the execution of this Order should be carried out in a coordinated manner by Microsoft, the domain registrar identified in **Exhibit 2** to the Complaint, and Cloudzy on such date and time within three (3) days of this Order as may be reasonably requested by Microsoft.

16. There is good cause to believe that Defendants have specifically directed their activities to the Southern District of New York.

17. There is good cause to believe that if Defendants are provided advance notice of Microsoft's TRO Application or this Order, Defendants would move their infrastructure, including migrating virtual machines and relocating the signspace.cloud website, allowing them to continue their misconduct, and they would destroy, move, hide, conceal, or otherwise make inaccessible to the Court evidence of their misconduct, including records evidencing the distribution of fraudulently obtained code signing certificates and malware-signing activity.

18. There is good cause to permit notice of the instant Order, notice of the Preliminary Injunction hearing and service of the Complaint by formal and alternative means, given the exigency of the circumstances and the need for prompt relief. The following means of service are authorized by law, satisfy due process, and satisfy Federal Rule of Civil Procedure 4(f)(3) and are reasonably calculated to notify Defendants of the instant Order, the Preliminary Injunction hearing and of this action: (1) transmission by email, facsimile, mail, and/or personal delivery to the contact information provided by Defendants to their domain registrars and hosting companies and as agreed to by Defendants in their domain registration and/or hosting agreements, (2) publishing

notice on a publicly available Internet website, (3) by personal delivery upon Defendants, to the extent Defendants provided accurate contact information in the United States; and (4) personal delivery through the Hague Convention on Service Abroad or similar treaties upon Defendants, to the extent Defendants provided accurate contact information in foreign countries that are signatories to such treaties.

19. There is good cause to believe that Defendants have no legitimate interest in carrying out their criminal activities.

20. There is good cause to believe that the harm to Microsoft in denying the relief requested in its TRO Application outweighs any harm to any legitimate interest of Defendants (of which there is none) and that there is no undue burden to any third party.

## TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

**IT IS THEREFORE ORDERED** that Defendants, their representatives, and persons who are in active concert or participation with Defendants and the Certificate Abuse Enterprise, are temporarily restrained and enjoined from: (1) fraudulently creating Microsoft tenants or otherwise accessing Microsoft's Artifact Signing service; (2) obtaining, selling, distributing, or otherwise trafficking in code signing certificates fraudulently obtained through Microsoft's Artifact Signing service; (3) signing malware or any other unauthorized software using certificates obtained from Microsoft's Artifact Signing service; (4) deploying malware on the computers of Microsoft, Microsoft's customers, or any other person, including through deceptive distribution methods such as spoofed websites, malicious advertising campaigns, and search engine optimization poisoning; (5) capitalizing on the trademarks of Microsoft to fabricate legitimacy for their malware distribution scheme, including creating installer files or websites that bear or mimic Microsoft's trademarks; (6) misappropriating that which rightfully belongs to Microsoft, its customers, or in

8

which Microsoft or its customers have a proprietary interest; (7) destroying the goodwill and reputation of Microsoft; (8) impersonating Microsoft, its systems, products, and services; (9) configuring, deploying, operating, or otherwise participating in or facilitating infrastructure described in the TRO Application, namely the signspace.cloud domain and the virtual machines hosted by Cloudzy identified in **Exhibit 2** and **Appendix B** to the Complaint, respectively, and through any other component or element of Defendants' illegal infrastructure at any location, including infrastructure Defendants may attempt to rebuild; and (10) undertaking any similar activity that inflicts harm on Microsoft, Microsoft's customers, or the public.

**IT IS FURTHER ORDERED** that Defendants, their representatives, and persons who are in active concert or participation with Defendants and the Certificate Abuse Enterprise are temporarily restrained and enjoined from (1) using and infringing Microsoft's trademarks, including specifically Microsoft's registered trademarks Microsoft®, Windows®, Microsoft 365®, Microsoft Teams®, and Azure®, and/or other trademarks, trade names, service marks, or Internet domain addresses or names containing or infringing such trademarks, trade names, or service marks; (2) using in connection with Defendants' activities, products, or services any false or deceptive designation, representation, or description of Defendants or of their activities, whether by symbols, words, designs, or statements, which would damage or injure Microsoft or result in deception of consumers; or (3) acting in any other manner which suggests in any way that Defendants' activities, products, or services are somehow sponsored by or affiliated with Microsoft, or passing off Defendants' activities, products, or services as Microsoft's.

**IT IS FURTHER ORDERED** that, with respect to the signspace.cloud domain identified in **Exhibit 2** to the Complaint, the following actions shall be taken:

A.    GoDaddy, as the domain name registrar for signspace.cloud, shall, within **three (3) business days** of receipt of this Order, unlock and transfer the registrar of record for signspace.cloud to MarkMonitor or such other registrar specified by Microsoft. The purpose of this paragraph is to ensure that Microsoft has control over the hosting and administration of signspace.cloud. Microsoft shall provide to GoDaddy and the domain registry any requested information or account details necessary to effectuate the foregoing.

B.    The domain registry shall be made active and shall resolve in the manner set forth in this Order, or as otherwise specified by Microsoft, upon taking control of the domain.

C.    GoDaddy shall take reasonable steps to work with Microsoft to ensure the transfer of the domain and to ensure that Defendants cannot use it to distribute fraudulently obtained code signing certificates, sign malware, or engage in any other activities prohibited by this Order.

D.    The WHOIS registrant, administrative, billing, and technical contact and identifying information for the signspace.cloud domain should be the following, or other information as may be specified by Microsoft:

Domain Administrator
Microsoft Corporation
One Microsoft Way Redmond, WA 98052
United States
Phone: +1.4258828080
Facsimile: +1.4259367329
domains@microsoft.com

E.    Prevent transfer, modification, or deletion of the domain by Defendants and prevent transfer or control of the domain to the account of any party other than Microsoft.

F.    Take all steps required to propagate the foregoing changes through the Domain Name System ("DNS"), including to the relevant domain registry.

G.    With regard to the domain registries, registrars, and hosting providers for signspace.cloud located outside the United States, the Court respectfully requests, but does not order, that they take the same or substantially similar actions as the foregoing so as to neutralize the threat posed by Defendants to the citizens of all countries, including their own. Defendants, their representatives and persons who are in active concert or participation with them are ordered to consent to whatever actions are necessary for non-United States registries, registrars, registrants, or hosts to effectuate this request.

**IT IS FURTHER ORDERED** that, with respect to the virtual machines hosted by Cloudzy and identified in **Appendix B** to the Complaint, the following actions shall be taken:

A.    Cloudzy shall, within **three (3) business days** of receipt of this Order, disable Defendants' access to all virtual machines identified in **Appendix B** to this Order and preserve all data, files, logs, and records associated with those virtual machines, including but not limited to disk images, network traffic logs, access logs, billing records, account information, and any other records relating to Defendants' use of those virtual machines.

B.    Cloudzy shall, within **three (3) business days** of receipt of this Order, provide Microsoft with access to and control over all virtual machines identified in **Appendix B** to this Order, including all data and files stored on the virtual machines and metadata and account information associated with the virtual machines.

C.    Cloudzy shall prevent Defendants from creating, accessing, or controlling any new virtual machines or other computing resources through Cloudzy's platform in connection with the activities prohibited by this Order.

D.    Cloudzy shall take reasonable steps to work with Microsoft to ensure that Defendants cannot use Cloudzy's services to continue their code signing operations or to gain

11

unauthorized access to computers, sign malware, or engage in any other activities prohibited by this Order.

**IT IS FURTHER ORDERED** that copies of this Order, notice of the Preliminary Injunction hearing, and service of the Complaint may be served by any means authorized by law, including (1) transmission by email, facsimile, mail, and/or personal delivery to the contact information provided by Defendants to their domain registrars and/or hosting companies and as agreed to by Defendants in the domain registration and/or hosting agreements, (2) publishing notice on a publicly available Internet website, (3) by personal delivery upon Defendants, to the extent Defendants provided accurate contact information in the United States, and (4) personal delivery through the Hague Convention on Service Abroad or similar treaties upon Defendants, to the extent they provided accurate contact information in foreign countries that are signatories to such treaties.

**IT IS FURTHER ORDERED**, pursuant to Federal Rule of Civil Procedure 65(b), that Defendants shall appear before this Court on May _15_, 2026, at _10:00_ a.m. ~~p.m.~~, to show cause, if there is any, why this Court should not enter a Preliminary Injunction, pending final ruling on the Complaint against Defendants, enjoining Defendants from the conduct temporarily restrained by the preceding provisions of this Order.

**IT IS FURTHER ORDERED** that Microsoft shall post bond in the amount of Ten Thousand Dollars ($10,000.00) to be paid into the Court registry.

**IT IS FURTHER ORDERED** that Defendants shall file with the Court and serve on Microsoft's counsel any answering affidavits, pleadings, motions, expert reports, or declarations and/or legal memoranda no later than _2_ day(s) prior to the hearing on Microsoft's request for a preliminary injunction. Microsoft may file responsive or supplemental pleadings, materials,

affidavits, or memoranda with the Court and serve the same on counsel for Defendants no later than _1_ day● prior to the preliminary injunction hearing in this matter. Provided that service shall be performed by personal or overnight delivery, facsimile, or electronic mail, and documents shall be delivered so that they shall be received by the other parties no later than _10:00_ a.m.~~~~. on the appropriate dates listed in this paragraph.

**IT IS SO ORDERED.**

Entered this _8th_ day of May, 2026.

_____
UNITED STATES DISTRICT JUDGE
Part I